# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUPE GONZALES SOLIS,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Operations of Social Security,<br><br>    Defendant. | Case No. ED CV 17-01656-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Lupe Gonzales Solis ("Plaintiff") challenges the Commissioner's denial of her application for disabled widow's benefits ("DWB"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II. PROCEEDINGS BELOW

On December 5, 2013, Plaintiff applied for DWB alleging disability beginning March 31, 2002. (Administrative Record ("AR") 62-63, 71.) Her application was denied initially on March 4, 2014 and upon reconsideration. (AR 82, 90-94.) Plaintiff filed a written request for hearing, and a hearing was held on May 4, 2016. (AR 41; *see* AR 97.) Plaintiff, unrepresented by counsel, appeared

and testified, along with an impartial vocational expert ("VE"). (AR 43-61.) On May 24, 2016, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] from March 31, 2002 through the date of decision. (AR 36.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on August 16, 2017. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2002, the alleged onset date ("AOD"). (AR 30.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: back pain; migraines; osteoporosis; insomnia; pain in joints; thyroid issue; and hip pain. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 32.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform sedentary work . . . specially as follows: the claimant can lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently; she can stand and/or walk for 2 hours out of an 8-hour workday with normal breaks; she can sit for 6 hours out of an 8-hour workday with normal breaks; and postural activities can be performed on an occasional basis.

(*Id.*) At **step four**, the ALJ found that Plaintiff was capable of performing past relevant work as an escrow clerk, and thus the ALJ did not continue to step five.

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

(AR 35-36.) Accordingly, the ALJ determined that Plaintiff had not been under a disability from the AOD through the date of decision. (AR 36.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

///

## IV. DISCUSSION

Plaintiff raises the following issues for review: (1) whether the ALJ properly considered the medical evidence in assessing Plaintiff's RFC; (2) whether the ALJ properly considered Plaintiff's subjective statements and testimony; and (3) whether the ALJ properly considered relevant vocational evidence at step four. (Joint Submission ("JS") 4-5.) For the reasons below, the Court affirms.

### A. The ALJ Properly Assessed Plaintiff's Subjective Statements And Testimony[2]

Plaintiff argues that the ALJ failed to properly consider her subjective symptom testimony. (*See* JS 20-23.) The Commissioner argues that the ALJ's evaluation of Plaintiff's testimony is supported by substantial evidence. (*See* JS 23, 26.)

#### 1. Plaintiff's Testimony

At the hearing, Plaintiff stated that she was 58 years old and had a high school education. (AR 46.) Plaintiff's last job was in 2002 as a financial representative who handled escrow accounts. (AR 47.) At that job, she worked at a computer while sitting down. (AR 47-48.) Plaintiff explained that she had not worked in the past 14 years because her husband's job transferred them to different states. (AR 48.) Plaintiff's husband passed away in September 2013. (*Id.*)

Plaintiff testified that she has been unable to work for the past five or six years because her lower back has "gotten worse." (*See* AR 49-50.) Plaintiff explained that she feels pain and stretching, and her lower back and spine area clicks when she turns. (AR 50.) Plaintiff also asserted that she has problems with her left hip and her neck. (AR 49.) Plaintiff stated that her neck gets stiff and sore,

---

[2] Because subjective symptom testimony is one factor that the ALJ must consider when assessing a claimant's RFC, the Court addresses this issue first before discussing the overall RFC determination.

4

and sometimes she cannot move it. (AR 50.)

Plaintiff testified that she suffers from migraines twice a week. (AR 51.) Her migraines last for about 20 to 30 minutes, and she also "[has] the aura that comes with it." (*Id.*) When that happens, Plaintiff's eyesight gradually "blurs completely" and gradually returns. (AR 54.) Plaintiff takes medication to regulate her migraines and "[t]o stop them from coming that often." (AR 51.) Plaintiff explained that she used to get them three or four times a week. (*Id.*)

Plaintiff stated that she takes medication for osteoporosis and osteopenia. (*Id.*) Plaintiff testified that she has trouble sitting and that her back was hurting during the hearing. (AR 51-52.) Plaintiff asserted that she can generally sit for about 20 minutes without serious pain. (AR 52.) She also has trouble standing and walking more than 45 to 60 minutes. (*Id.*)

Plaintiff did not know how much weight she could lift without hurting herself, but she stated that she could lift one gallon of milk. (*Id.*)

Plaintiff testified that during the day, she gets up, showers, and "do[es] whatever [she has] to do" before moving on with the day. (*Id.*) Plaintiff's grandchildren, ages 10 and 13, are also at her home. (AR 52-53.) Plaintiff asserted that her son cares for her financially. (AR 53.)

Plaintiff testified that she could not physically do the work she did 16 years ago. (*Id.*) Plaintiff explained that she cannot sit for eight hours a day anymore and has to lie down after a few hours. (AR 53-54.) Plaintiff stated that she lies down for about a half hour to an hour at a time to relieve her back, and she would require additional breaks at work to do this. (AR 54.)

Plaintiff explained that her daily medications "[t]emporarily" help her back, hip, and neck for "a few hours." (AR 55.) Plaintiff also constantly changes her medication for hypothyroidism, which is "pretty much controlled." (AR 55-56.)

Plaintiff stated that "it's been hard" since her husband passed away, and she cannot sleep some nights. (AR 55.)

///

### 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id.* The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 33.) The ALJ relied on the following reasons: (1) routine and conservative treatment; (2) activities of daily living; and (3) lack of supporting objective medical evidence. (*See* AR 33-35.) No malingering allegation was made, and therefore the ALJ's reasons must be "clear and convincing."

#### a. Reason No. 1: Routine and Conservative Treatment

An ALJ may discount a claimant's credibility based on routine and

conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

The ALJ observed that medications "have been relatively effective in controlling" Plaintiff's symptoms. (AR 34; *see* AR 33.) In August 2012, Plaintiff reported that "Tylenol with codeine [was] working well for the acute headaches." (AR 255.) In September 2012, Plaintiff reported that after 4 weeks of taking Verapamil, a hypertension medication, her migraines—which she previously got about twice a day—began occurring only two or three times a week and became less severe. (AR 258.) Plaintiff also took Flexeril, a muscle relaxant, which helped with her headaches and helped her sleep. (*Id.*)

For Plaintiff's left hip, she received anti-inflammatory medication, a steroid injection, and a non-steroid topical gel after icing and exercises previously helped her symptoms. (AR 283, 289.) In March 2015, Plaintiff was referred for additional physical therapy and electrotherapy. (AR 280.)

Because Plaintiff's treatment primarily consisted of pain medication without evidence of worsening, the ALJ permissibly discounted Plaintiff's credibility based on her conservative treatment plan. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *see also Ryan*, 528 F.3d at 1198 (an ALJ's decision should be upheld "[w]here evidence is susceptible to more than one rational interpretation").

The Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

///

///

### b. Reason No. 2: Activities of Daily Living

As part of the credibility determination, the ALJ may consider inconsistencies between the claimant's testimony and his or her daily activities. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The ALJ noted that Plaintiff "described daily activities that are not limited to the extent one would expect" in light of Plaintiff's complaints of disabling symptoms. (AR 34.) The ALJ observed that Plaintiff described showering, eating meals, walking, caring for her grandchildren for three hours a day, feeding and taking care of her dog and birds, preparing her own meals, doing laundry, driving, and cleaning her home. (AR 31.) The ALJ therefore determined that Plaintiff's "ability to participate in such activities" is inconsistent with her statements about the intensity, persistence, and limiting effects of her symptoms (AR 34) and properly discounted her testimony. *See Molina*, 674 F.3d at 1112 (the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms" (quoting *Lingenfelter*, 504 F.3d at 1040)).

The Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

///

### a. Reason No. 3: Lack of Supporting Objective Medical Evidence

The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ accurately summarized Plaintiff's medical records, noting that "physical examinations were frequently unremarkable" with no acute distress. (AR 34.) A December 2012 bone density test revealed osteoporosis, and a February 2016 bone density test revealed osteoporosis of the neck and lumbar spine. (AR 265, 298.) The ALJ noted that Plaintiff's examinations sometimes showed mild back tenderness to palpation over the lumbar region and left hip, but Plaintiff usually had full range of motion in those areas. (AR 34.) No significant motor strength issues or gait abnormalities were noted. (*Id.*; *see* AR 252, 255, 258-59, 267-72, 284, 288-89.) And as discussed above, the ALJ observed that medications "have been relatively effective in controlling the claimant's symptoms." (AR 34.)

Overall, the ALJ determined that "the objective medical evidence regarding [Plaintiff's] impairments was generally unremarkable." (*Id.*) Although Plaintiff's treatment records may be interpreted in more than one way, the evidence can rationally support the ALJ's determination. Accordingly, the Court should uphold his interpretation of the evidence. *See Ryan*, 528 F.3d at 1198; *Robbins*, 466 F.3d at 882.

### B. The RFC Determination Is Supported By Substantial Evidence

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 CFR §§ 404.1545(a)(3), 404.1546(c); *see Robbins*, 466 F.3d at 883 (citing Soc. Sec. Ruling 96-8p (July 2, 1996), 1996 WL 374184, at *5). In doing so, the ALJ may consider any statements provided by

medical sources, including statements that are not based on formal medical examinations. *See* 20 CFR §§ 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan*, 169 F.3d at 599.

In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [and] also considered opinion evidence" in accordance with social security regulations. (AR 32.)

Plaintiff contends that the ALJ failed to properly consider the effect that her migraines would have on her ability to work. (JS 5-6.) However, as discussed above, the ALJ considered the medical evidence and found that Plaintiff's allegations were inconsistent with the conservative treatment that effectively controlled her symptoms. (*See* AR 33-34.)

Plaintiff also contends that the ALJ failed to properly consider Plaintiff's anxiety and depression. (JS 11.) The ALJ determined that Plaintiff's mild anxiety and depression were "nonsevere" because they "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." (AR 31.) The ALJ noted that Plaintiff had no mental health treatment, no history of psychiatric hospitalization, and no record of seeking treatment with a counselor or mental health professional. (*Id.*) The ALJ also observed that, despite a referral to a support group for grieving (*see* AR 270), there is no indication that Plaintiff ever attended the group. (AR 31.) Although Plaintiff was diagnosed with anxiety and major depression (*see* AR 267-71, 288), a mere diagnosis of an impairment—or even treatment for it—is insufficient to establish severity at step two. *See Harvey v. Colvin*, No. CV 12-2507-MAN, 2013 WL 3899282, at *5 (C.D. Cal. July 29, 2013) (citing *Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir. 1993)). Moreover, in her application, Plaintiff did not allege any impairment related to anxiety or depression.

(AR 65; *see* AR 73.)

///

Finally, Plaintiff contends that the ALJ erred in evaluating the opinion of treating physician Agnes Quion, M.D., instead giving greater weight to the opinions of the non-examining state agency reviewing physicians. (JS 12.) The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31. When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

In an August 2015 statement, Dr. Quion opined that Plaintiff could stand and walk less than 2 hours during an 8-hour day and sit about 2 hours during an 8-hour day, with a 15-minute break to walk around every 30 minutes. (AR 291-92.) Dr. Quion also indicated that Plaintiff would need to lie down at unpredictable intervals twice a day. (AR 292.) Dr. Quion stated that these limitations were due to left hip arthritis, bilateral knee arthritis, bilateral shoulder arthritis, and degenerative arthritis in Plaintiff's mid- and lower-back and neck. (*Id.*) The ALJ assigned this opinion "little weight," finding it unsupported by Plaintiff's mild and standard treatment and minimal clinical findings. (AR 35.) The ALJ also noted an inconsistency between Dr. Quion's assertion that Plaintiff's limitations were due to arthritis and her treating notes, which did not mention arthritis. (*Id.*; *see* AR 267-72.) The ALJ properly discounted Dr. Quion's opinion on this basis. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (finding that a contradiction between a physician's opinion and his own treatment notes is a specific and legitimate reason to reject that opinion).

Instead, the ALJ gave "great weight" to the opinions of the state agency

medical consultants who reviewed Plaintiff's case record and understood the evidentiary requirements of social security disability programs. (AR 34.) The ALJ found their opinions to be consistent with the record as a whole. (AR 34-35.) The ALJ was therefore permitted to assign great weight to these opinions. *See Morgan*, 169 F.3d at 600 ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."); *Ruiz v. Colvin*, 638 F. App'x 604, 606 (9th Cir. 2016) (finding that the ALJ did not err in giving the greatest weight to nonexamining state agency medical consultants because "the ALJ found their opinions consistent with the greater medical record, progress and treating notes, and [the plaintiff]'s description of her daily activities").

In sum, the Court finds that the ALJ's RFC assessment is supported by substantial evidence. *See Arrieta v. Astrue*, 301 F. App'x 713, 715 (9th Cir. 2008) (finding that substantial evidence supported the RFC determination when the ALJ properly evaluated the opinion evidence and relied on supporting medical reports and testimony).

### C. The ALJ Did Not Err In Relying On The VE's Testimony At Step Four

At the administrative hearing, the ALJ posed the following hypothetical to the VE:

> Assume . . . that we have an individual with the Claimant's education which is high school; the same work history and skills as the Claimant. . . . [T]he individual would be limited to sedentary work, that's a sitting job; to lift[,] carry, push or pull ten pounds occasionally and less than ten pounds frequently; could stand or walk for about two out of eight; could sit for about six out of eight. Postural activities would be limited to occasional. Could such a person perform any of the past work of the Claimant?

(AR 59.) The VE testified that a person with those limitations could perform the job of an escrow clerk as it is generally performed, but not as how Plaintiff had

actually performed it.[3] (*Id.*)

Plaintiff contends that the ALJ erred by failing to further inquire about the technological changes that have taken place since Plaintiff last performed the job of escrow clerk in 2002. (JS 27.) Plaintiff asserts that she does not have the skills necessary to perform the job, noting the "vast" technological advances and changes involving electronic data since 2002. (*Id.*) Plaintiff argues that "it would be impossible for anyone to maintain the skill level" that is required to perform the job of escrow clerk in 2016 after not having done the work in 14 years. (JS 27-28.)

Plaintiff provides no support for this argument or any evidence to establish that, contrary to the VE's testimony, she is unable to perform the job as it is generally performed. Indeed, Plaintiff testified that when she did perform this work, she worked "[o]n a computer, sitting down." (AR 47-48.) Despite vague allegations of technological changes, Plaintiff has not shown any error in the ALJ's reliance on the VE's testimony. *See Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) ("[A]t least in the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable . . . ."); *see also Bayliss*, 427 F.3d at 1217 ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." (citation omitted)).

Therefore, the Court finds that there is sufficient support for the VE's conclusion that Plaintiff could perform the job of escrow clerk.

///

///

///

---

[3] The VE testified that Plaintiff had actually performed the job at the light level, with lifting up to 20 pounds. (AR 59.)

13

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 31, 2018

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**